IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23CR460 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIE EARL JACKSON, JR. | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Rebecca C. Lutzko, United States Attorney, and Kelly L. Galvin, Assistant United States Attorney, and hereby provides the following in support of its sentencing memorandum. The Government submits that the United States Probation Office properly calculated Jackson's Offense Level and Criminal History Category, Offense Level 27 with acceptance, Criminal History Category I, and requests a sentence at the highest end of the range, 87 months imprisonment.

**I.   FACTS**

In early June 2023 an ATF Confidential Informant (CI) met Corte'z Buggs, a methamphetamine and heroin distributer, on Cleveland's east side.[1]  The CI then introduced Buggs to an ATF undercover agent (UCA) for the purpose of conducting controlled purchases of narcotics.  The UCA purchased several ounces of methamphetamine and two rifles from Buggs on June 5, 2023 documented by multiple video and audio recordings, screen capture of text

---

[1] While much of the investigation is outlined in the Presentence Report, the Government has included other information documented in the ATF reports of investigation but not cited by report number herein. (See R. 54: PSR *SEALED* ¶¶ 6-31, PageID 439-43).  As of the date of this filing Buggs has not been convicted, see United States v. Corte'z Buggs, 1:23CR458.

messages, and prerecorded government funds. During the controlled purchase Buggs made multiple references to being able to get the UCA firearms and "switches" (machinegun conversion devices). Buggs stated he had a firearm source of supply. They arranged to conduct future narcotics transactions and Buggs agreed to introduce his source of firearms to the UCA.

On June 14, 2023, the UCA communicated via text messages to Buggs to arrange the purchase of methamphetamine and another firearm. Buggs sent pictures of multiple firearms including pistols and rifles and said the firearm source was local but the long guns were currently in Ashtabula.[2] On June 15, 2023 Buggs sold the UCA one ounce of a heroin/fentanyl mixture, then introduced the UCA to the Defendant, Willie Earl Jackson, Jr., who introduced himself as "Will" and explained that he was in the business of selling firearms. "Will" wanted to get his "FFL" (federal firearms license) and said he could source all kinds of firearms including [Glock] "switches." The UCA purchased a Glock, Model Gen5, 9mm pistol for $900 from Jackson who represented the pistol was "clean." The UCA replied that regardless the serial numbers would be scratched off. Jackson admitted he wanted to acquire illegal firearms and further would remove the serial numbers. Jackson was identified from his 2020 Jeep registration which he drove to the transaction. ATF confirmed Jackson's identity through his OHLEG photograph and recognized his name from a prior investigation the year before.

On April 1, 2022, ATF agents met with Jackson and told him that multiple traces of firearms he purchased in Ohio from FFLs between 2018 and 2021 were recovered in crimes.[3] He

---

[2] Jackson's codefendant Shane Plats resided in Ashtabula, Ohio and obtained many firearms from a local federal firearms dealer.

[3] An American Tactical Imports 5.56mm rifle recovered in Toledo, Ohio was purchased 710 days prior to recovery, a Smith & Wesson .22 caliber rifle recovered in Euclid, Ohio was purchased 219 prior to recovery, a Taurus 9mm pistol was recovered in New York, New York 41 days prior to recovery, a Beretta .40 caliber pistol was recovered in Maple Heights, Ohio 24 days prior to recovery, and a Smith &

was served with a warning letter advising Jackson that "*it is unlawful to misrepresent that you are the actual transferee/buyer of a firearm when you are acquiring the firearm for someone else.*" Jackson told ATF agents that he was a professional basketball player and gun enthusiast and that he frequently sold firearms before traveling. He pledged not to purchase or sell more firearms and said he was moving back to Florida to train and play basketball.

On June 16, 2023 Buggs sold UCAs methamphetamine and brokered the sale of a Smith & Wesson 5.7 caliber pistol, ammunition and magazines for Jackson to the UCA for $1700. During this transaction Jackson discussed other firearms and [Glock] switches with the CI. The CI said that he/she was a convicted felon and couldn't legally buy firearms. Jackson replied that he could create a new identity including fictitious social security cards, passports, and other government identifications, and create credit histories with an entire profile for $3000.

On June 20, 2023, Jackson sent text messages to the UCA with pictures of Palmetto State Armory, Model Dagger, 9mm pistols for sale. Upon meeting Jackson showed the UCA several rifles in his trunk for sale including one that Jackson claimed was fully automatic. Jackson offered to sell his personal pistol, a Palmetto State Armory, 9mm pistol, along with a FN Herstal 5.7x28mm rifle, and multiple high-capacity magazines for $3300. He also offered to sell [Glock] switches (pistol machinegun conversion devices), drop-in auto sears (for converting rifles into machineguns) and silencers. Jackson said the Dagger pistol orders were filled and he intended to "reup" from the money earned from the UCAs purchase that day. He admitted knowledge of federal firearms licensing rules but it was easier to sell firearms with "no papers" (ATF 4473 Form) because then he didn't owe any taxes.

---

Wesson 9mm pistol was recovered in Toledo, Ohio 194 days prior to recovery.

On June 21, 2023 Jackson sold UCAs four firearms for $4400; a Smith & Wesson, Model M&P-15, no caliber listed, a Česká Zbrojovka a.s. (CZ), Model CZ Scorpion EVO 3 S1, 9mm-rifle,[4] and two Palmetto State Armory, Model Dagger Compact, 9mm-pistols. Although Jackson claimed the CZ rifle fired automatic, upon inspection ATF determined the trigger did not support that function and it fired semi-automatic.

On June 27, 2023, Jackson sold UCAs an Anderson Manufacturing, multi-caliber rifle, and four (4) Palmetto State Armory Dagger 9mm pistols for $4000. On June 28, 2023, ATF learned that the Palmetto State Armory Dagger pistols had been shipped to an FFL in Ashtabula, Ohio and purchased by Shane Plats.

On July 6, 2023, Jackson sold UCAs two pistols, a Ruger .40 caliber and a Smith & Wesson .40 caliber, and two rifles, a New Frontier multi-caliber and a Palmetto State Armory 7.62x39mm for $3260. During the transaction Jackson said he had "young dudes" supplying him with "switches," he was hoping to get "a case of them," and he frequently attended gun shows to fulfill large orders. He also offered to "strip" firearms of any serial numbers.

---

[4] The Česká Zbrojovka a.s. (CZ), Model CZ Scorpion EVO 3 S1, 9mm-rifle was linked to separate NIBIN hits on 2/2/21 (homicide), 9/15/21 (felonious assault – 5 counts/victims) , and 10/15/21 (homicide – 2 victims).



On July 10, 2023, Jackson sold UCAs ten firearms – a Diamondback Firearms multi-caliber rifle, a New Frontier Armory, Model C-4, multi-caliber rifle, a Palmetto State Armory, model PSAK47, 7.62.39mm rifle, a Ruger, model P89, 9mm pistol, a Smith & Wesson, model SD9VE, 9mm pistol (*serial number partially obliterated*), a CZ, model P-10M, 9mm pistol, a Taurus, model G2C, 9mm pistol, a Taurus, model 856 UL, .38spl +P revolver, a Raven Arms,

5

model P-25, .25 caliber pistol, and a Hi-Point, model 995, 9mm rifle, all depicted below, plus magazines and holsters for $8000.









On July 13, 2023, Jackson sold UCAs three firearms, two Smith & Wesson, model M&P-15, 5.56mm-rifles, depicted below,



7

and a Tisas, Model 1911 A1 Service Special, "Punisher Style" 45 auto, depicted below, plus ammunition for $4500.



On July 17, 2023, Jackson attempted to buy a Canik pistol from Parma Armory Firearms, a federally licensed dealer, but the dealer became suspicious of the transaction and declined to sell the pistol. On July 25, 2023, Jackson sold UCAs four firearms – a Hi-Point, model 4095 pistol, an American Tactical, model Omni Hybrid, Multi-Cal rifle, a Springfield Armory, Model 1911 Garrison, .45 caliber pistol, and a Ruger, Model PC Charger, 9mm pistol, depicted below, for $4300.





8



On August 2, 2023, Jackson informed UCAs that his Dagger source of supply (Plats) had been paid $8000 as an advance for future Daggers but was no longer responding to him.[5] On August 3, 2023, Jackson sold UCAs his last Palmetto State Armory Dagger 9mm pistol for $850. On August 10, 2023, believing he was meeting UCAs to obtain a $5,000 advance for gun show purchases, Jackson was arrested by ATF on a federal criminal complaint.

During the firearms purchases, various ATF undercover agents told Jackson that the firearms would be transported across U.S. borders because they could be sold for much higher amounts, thus demonstrating Jackson's knowledge that the firearms would be used in an illegal manner or transferred to persons in violation of federal law. Jackson clearly understood the profit margin for selling firearms out of the country as demonstrated by a conversation with an agent on August 2, 2023 wherein he discussed the UCA putting in an 'order' for firearms Jackson would buy at a gun show knowing the UCA would "quadruple whatever, you feel me, you using them or selling them for." Jackson himself discussed obtaining prohibited firearms such as machinegun conversion devices and knew the UCAs intended to obliterate serial

---

[5] A search warrant was executed at Plats' home on July 27, 2023. A total of 15 firearms, including 7 Palmetto State Armory lower receivers, were seized by ATF.

numbers. On August 3, 2023, during discussions about Dagger pistols Jackson claimed he only made about $50-70 off selling firearms but also stated he was "strapped for cash" since his Dagger supplier (Plats) had been given money but never responded to Jackson again [in late July]. In total, Jackson sold ATF undercover agents 35 firearms including six Palmetto Armory Dagger compact 9mm pistols originally purchased by Shane Plats for $35,210.[6]

Jackson entered guilty pleas on December 19, 2023 without a written plea agreement to both counts of the Indictment, Dealing Firearms without a License, in violation of 18 § U.S.C. 922(a)(1)(A), and Trafficking in Firearms, in violation of 18 § U.S.C. 933(a)(1).

## II.     ARGUMENT

The Government agrees with the Guideline calculations contained in the Presentence Report. (R. 54: PSR *SEALED* ¶¶ 37-49, PageID 444-45). The Government presumes that during allocution the Defendant will maintain acceptance of responsibility, and agrees that the Adjusted Offense Level should be 27, with a Criminal History Category of I, producing an advisory Guideline range of 70-87 months imprisonment.

### A. Sentencing Enhancements

#### 1. Law supporting 2K2.1(b)(5) Enhancement

The Guidelines provide for a 4-level increase in the offense level for a firearms offense if "the defendant engaged in the trafficking of firearms[.]" *See* U.S.S.G. § 2K2.1(b)(5). The Commentary to § 2K2.1 provides as follows:

---

[6] On July 6, 2023, Jackson sold a seventh Palmetto Armory Dagger 9mm pistol he acquired from Plats to an ATF target, not named herein. As ATF agents surveilled the target, they observed Jackson arrive in his Jeep and conduct the sale with the target. Minutes after Jackson left the area, the target sold the pistol to ATF undercover agents. The target was eventually indicted on federal drug trafficking charges. The target was not prohibited from possessing firearms by convictions but had been arrested on April 13, 2023, for drug trafficking. Charges were terminated on May 17, 2023, just six weeks prior to the Dagger transfer by Jackson to the target. The target had other weapons related arrests.

> In General.—Subsection (b)(5) applies, regardless of whether anything of value was exchanged, if the defendant—
>
> (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and
>
> (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—
>
> (I) whose possession or receipt of the firearm would be unlawful; or
>
> (II) who intended to use or dispose of the firearm unlawfully.

See U.S.S.G. § 2K2.1, comment. (n.13). See also n.11.[7]

The Sixth Circuit has held that a district court is required to find the facts supporting this provision by a preponderance of evidence. *United States v. Freeman*, 640 F.3d 180, 188 (6th Cir. 2011); *see United States v. Torres*, 644 F. Appx. 663, 666-667 (6th Cir. 2016); *see also United States v. Steffen*, 741 F.3d 411, 414 (4th Cir. 2013) (setting forth burden of proof for sentencing enhancements). The Sixth Circuit has also held that when establishing whether a defendant knew or had reason to believe that an individual receiving the firearm is unlawful, in accordance with U.S.S.G. § 2K2.1, comment. (n.13), courts must use "probable-cause logic" or "common-sense" factors. *United States v. McKenzie*, 33 F.4th 343, 349 (6th Cir. 2022); *see United States v. Pawlak*, 822 F.3d 902 (6th Cir. 2016) (quoting *United States v. Juarez*, 626 F.3d 246, 256 (5th Cir. 2010)). The buyer of the weapons need not actually be a prohibited person so long as the defendant learned of facts that create a substantial likelihood that the buyer was prohibited. *See*

---

[7] An upward departure may be warranted in any of the following circumstances: (B) the offense involved multiple National Firearms Act Weapons (e.g., machineguns, destructive devices, military type assault rifles…

*McKenzie*, 33 F.4th at 350-351 (holding that the defendant knew the buyers were prohibited due to the markup increase for the weapons, the buyers were "at most" acquaintances of defendant, and one buyer told defendant he was denied the ability to buy the gun); *see also Pawlak*, 822 F.3d at 912-913 (holding that nature of the sales, quantity and quality, of firearms, and price led to reasonable belief even though the buyer was an undercover agent); *United States v. Henry*, 819 F.3d 856 (6th Cir. 2016); *United States v. Torres*, 644 F. Appx. 663 (6th Cir. 2016) (holding that defendant has reasonable belief that undercover team was prohibited buyers due to comments made by the undercover team about reselling, the defendant asking them to sell him drugs, and a statement by the Defendant telling the undercover team that the revolver is useful due to it not leaving behind casings); *United States v. Fields*, 608 F.Appx 806, 812-813 (11th Cir. 2015) (holding that nothing in the Guidelines points to that the defendant's belief must be true).

In *United States v. Freeman*, 640 F.3d 180, 189 (2011), the Sixth Circuit had "no problem" concluding the enhancement applied because the defendant bartered and sold guns to a drug dealer for cash in the early morning hours. *See also United States v. Jenkins*, 528 F. Appx. 483, 486 (6th Cir. 2013) (holding that application of trafficking enhancement was appropriate because one of the weapons defendant sold to undercover agent had obliterated serial number, another weapon was an illegal, sawed-off shotgun, and defendant advertised one of the weapons as a "murder weapon"); *United States v. Cummings*, 1994 WL 91825 (unpublished), at *2 (6th Cir., March 22, 1994) (holding that application of previous version of enhancement was appropriate where the volume of defendant's gun sales (14 sales) was "significant," handguns constituted the largest proportion of the weapons sold; defendant knew his customers were criminals; and his customers knew the guns were stolen).

12

In upholding the application of the trafficking enhancement, the Sixth Circuit, in *Freeman*, favorably cited *United States v. Juarez*, 626 F.3d 246, 252 (5th Cir. 2010) and *United States v. Mena*, 342 F. Appx. 656, 658 (2nd Cir. 2009). In *Juarez*, the Fifth Circuit held that the fact that the transferee paid $200 over retail cost gave defendant reason to believe that firearms were being purchased for an unlawful purpose. *Juarez*, 626 F.3d at 252. In *Mena*, the Second Circuit found "the circumstances of the offense conduct indicate by a preponderance of the evidence that [the defendant] knew or had reason to believe that his delivery of the firearms was to someone or people who intended to use or dispose of the firearms unlawfully,' where the defendant twice delivered guns in a plastic bag for cash on a street in Manhattan." *Mena*, 42 F. Appx. at 658. Additional authorities further support the applicability of the trafficking enhancement against the defendant in this case. *See United States v. West*, 563 F. Appx. 745, 747 (11th Cir. 2014) (upholding trafficking enhancement where, among other things, (1) the defendant sold seven guns to undercover officers in several transactions; (2) the undercover officers told the defendant they intended to resell the guns out of state; (3) the undercovers sought and purchased guns, such as handguns and assault rifles, designed for use on humans, not for hunting; and (4) there was discussion between the defendant and the undercovers regarding obliteration of a serial number on one of the guns); *see also United States v. McMillar*, 518 F. Appx. 867 (11th Cir. 2013) (holding that due to undercover agents previously buying guns, wanting to sell guns that could be concealed, and undercover agents informed defendant they would sell the guns for double the price in New York); *United States v. Evans*, 760 F. Appx. 188, 192 (4th Cir. 2019) (holding that defendant had reason to believe due to the large number of firearms stolen, location of the recovered firearms, relationship between defendant and buyer, defendant's initial false statements about disposing of the firearms, defendant's admitted

membership in a gang, and the images of defendants and others with several of the stolen weapons displaying gang signs); *United States v. Jennings*, No. 22-220, 2023 U.S. App. LEXIS 8200 (2d Cir. Apr. 6, 2023)[8] (holding that enhancement was properly applied due to evidence of series of sales to a single, known buyer who represented to defendant their intention to set up a market for guns); *United States v. Crawford*, No. 21-60755, 2023 U.S. App. LEXIS 11149 (5th Cir. May 5, 2023) (holding that the enhancement was proper due to defendant "covertly" selling guns to CI, defendant sold the firearm for more than retail value, and the continuous switching of sale locations); *United States v. Crockett*, 779 F. Appx. 536, 540 (10th Cir. 2019) (holding that defend

    *See also Jenkins, supra* (upholding enhancement because of, among other things, defendant sold undercover illegal, sawed-off shotgun). *Jenkins*, 528 F. Appx. at 486 (holding that application of trafficking enhancement was appropriate because, among other things, one of the weapons defendant sold to undercover agent had obliterated serial number) (citing *United States v. Marceau,* 554 F.3d 24, 32 (1st Cir. 2009) (upholding trafficking enhancement in large part because the defendant removed the firearms' serial numbers). Other courts have noted that "the serial number is obliterated from a gun so that it cannot be traced by law enforcement. The act is done in anticipation that the gun will be used in criminal activity." *Marceau*, 554 F.3d at 32 (citation omitted). In short, as was the case in *Juarez*, *supra*, it is highly suspect, and should have been to the defendant, that the UCAs were purchasing guns on the street from the defendant for cash, above retail prices, and intended to use the firearms illegally.

---

[8] https://plus.lexis.com/api/document/collection/cases/id/67Y9-91G1-F4GK-M0N0-00000-00?cite=2023%20U.S.%20App.%20LEXIS%208200&context=1530671

For all the foregoing reasons Jackson's objection to the 4-level enhancement under § 2K2.1(b)(5) should be denied.

2. *Law Supporting 2K2.1(b)(6)(B) enhancement.*

The § 2K2.1(b)(6)(B) enhancement applies to a defendant who "[u]sed or possessed any firearm or ammunition in connection with another felony offense" or who "possessed or transferred any firearm ... with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The application notes state that the enhancement should apply "if the firearm ... facilitated, or had the potential of facilitating, another felony offense." *Id*. cmt. n. 14(A). The government bears the burden of establishing facts to support this enhancement by a preponderance of the evidence. *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014); *United States v. Shield*, 644 F.3d 1040, 1043 (6th Cir. 2011).

For purposes of the enhancement, "[a]nother felony offense" means "any Federal, state, or local offense, other than the explosive or firearms possession [offense] ... punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1(b)(6)(B) cmt. n. 14(C).

In the instant case several other federal felony offenses, such as making false statements in connection with the acquisition of a firearm, possession of firearm with an obliterated serial number, and transferring a firearm to a prohibited person, were available but not charged.

3. *Law supporting application of both § 2K2.1(b)(5) and § 2K2.1(b)(6)(B).*

The Defendant may be subject to both the § 2K2.1(b)(5), four-level enhancement for firearms trafficking and the § 2K2.1(b)(6)(B) four-level enhancement for use in connection with another felony offense. The Sixth Circuit has held that the legal interpretations of the Sentencing

15

Guidelines, including whether impermissible double counting occurred, is reviewed de novo. *United States v. Clark*, 11 F.4th 491, 493-494 (6th Cir. 2021).

Because a court may impose two enhancements arising from the same conduct, provided the enhancements "penalize distinct aspects of [a defendant's] conduct and distinct harms," *United States v. Smith*, 516 F.3d 473, 476 (6th Cir.2008) (internal quotations and citation omitted), application of both the § 2K2.1(b)(5) and § 2K2.1(b)(6)(B) enhancements do not constitute double counting. If precisely the same aspect of a defendant's conduct results in an increase to a sentence in two ways, then impermissible double counting occurs. *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022). If the defendant is punished for "distinct aspects of his conduct," then no double counting has occurred. *Untied States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010). "In other words, district courts may impose two enhancements arising from the same conduct, provided the enhancements penalize distinct harms." *Nunley*, 29 F.4th at 830 (internal quotation marks and ellipsis omitted).

Sister circuits have also held that applying both § 2K2.1(b)(5) and § 2K2.1(b)(6)(B) is permissible and not double-counting in multiple scenarios. *See United States v. Stinson*, 978 F.3d 824, 829 (1st Cir. 2020) (holding that double-counting was not applicable as § 2K2.1(b)(6)(B) was being applied to the burglary offense while § 2K2.1(b)(5) applied to the trafficking offense); *United States v. Singletary*, 29 F.4th 313, 317 (5th Cir. 2022) (holding that no double-counting occurred due to (b)(6)(B) applying to the trafficking of guns to facilitate a drug distribution conspiracy while (b)(5) went to the persons who could not lawfully possess the weapons); *United States v. Rodriguez*, 884 F.3d 679, 680-681 (7th Cir. 2018) (finding both enhancements applied when defendant knew the guns he sold were being used to commit other felonies for (b)(6)(B) and sold to prohibited persons in (b)(5)); *United States v. Grove*, 752 F.Appx. 252, 254 (4th Cir.

16

2018) (finding both enhancements applied when Defendant had reason to believe that the heroin dealer would use firearms obtained through the sale in connection with the dealer's heroin trafficking).

5. *Factual basis supporting application of both enhancements.*

The same facts that support application of § 2K2.1(b)(5) for trafficking in firearms also support the application of § 2K2.1(b)(6)(B) for use in connection with another felony offense for separate and distinct conduct.

- Jackson's statements regarding his $50-70 profit per firearm (supports trafficking enhancement);

- Jackson's July 17, 2023 straw purchase attempt of a pistol from an FFL (supports trafficking enhancement and chargeable felony offense under § 2K2.1(b)(6)(B));

- The April 1, 2022 ATF letter warning him that straw purchasing firearms was a federal crime (supports trafficking enhancement);

- Following receipt of the ATF warning letter Jackson conspired with Plats to obtain Palmetto Armory Dagger pistols and other firearms thus eliminating Jackson as the original purchaser (supports trafficking enhancement);

- Jackson's introduction to ATF by a narcotics distributor (Corte'z Buggs) and firearms sales during narcotic purchases (supports trafficking enhancement and chargeable felony offense under § 2K2.1(b)(6)(B));

- Jackson's statements to obtain and sell illegal/prohibited firearms (supports trafficking enhancement);

- Jackson's sales of firearms with NIBIN leads demonstrates transfers at a "street" level (supports trafficking enhancement);

- Jackson's statements to remove serial numbers, knowledge that UCA/intended recipient would obliterate firearm, and sale of an obliterated firearm (supports trafficking enhancement and chargeable felony offense under § 2K2.1(b)(6)(B));

- Jackson's statements to produce fictitious identifications for prohibited person (supports trafficking enhancement);

- Jackson's knowledge selling a firearm to prohibited person (supports trafficking enhancement and chargeable felony offense under § 2K2.1(b)(6)(B));

17

- Jackson's knowledge that firearms would be sold and distributed outside the U.S. (supports trafficking enhancement);

- Jackson's knowledge that a federal firearms license was required to sell firearms (supports trafficking enhancement);

- Jackson's July 6, 2023 sale of a Palmetto Armory Dagger 9mm pistol to an ATF target (supports trafficking enhancement and chargeable felony offense under § 2K2.1(b)(6)(B));

- The number of firearms Jackson sold within 8 weeks (supports trafficking enhancement);

- The type of firearms Jackson sold include high powered rifles and common street-level quality pistols such as Smith & Wesson, Taurus, and Ruger (supports trafficking enhancement).

4. <u>18 U.S.C 3553(a) Factors.</u>

The § 3553(a) factors support a sentence within the advisory Guideline range. Despite the statutory maximum of 15 years for Count Two, Trafficking in Firearms, his Criminal History Category of I adequately lowers his potential range. The Government is extremely concerned with the casual manner in which Jackson, a college educated and employable man, sold $35,000 worth of high caliber rifles and common crime-gun pistols in eight weeks. More troubling is the number of likely unknown street-level sales Jackson conducted during this same time. Rarely does a defendant have the luxury of ATF agents personally informing him that his conduct violates federal law, and to cease immediately, or acquire the easily accessible remedy of a federal firearms license. The brazenness of his conduct coupled with the very high potential the firearms he sold could be used in violent shootings or robberies drives the Government's recommendation for a sentence at the highest end of the range, 87 months, despite the mitigating factors of Jackson's ties to the community, his education and other personal history, and his acceptance of responsibility.

It is incomprehensible to the Government that a person who had immediate family members die in violent crimes would sell firearms at the street level with drug dealers side-by-side or to others with knowledge they would be used to inflict violence in and outside the country. Once he received a visit from ATF in April 2022 informing him that guns he purchased then sold were used in crimes, that his liberty could be compromised if he continued, given his educational level one would presume he would stop. Given his financial problems documented in the Presentence Report, the Government can only conclude that he engaged in this conduct to pay his many debts.

### III. CONCLUSION

For the foregoing reasons, the Government respectfully requests the Court apply all sentencing enhancements and impose a sentence of 87 months imprisonment.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By: /s/ Kelly L. Galvin
Kelly L. Galvin (OH: 0062585)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3731
(216) 522-8355 (facsimile)
Kelly.L.Galvin@usdoj.gov